```
 1                  UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
 2                      SAN ANTONIO DIVISION

 3   UNITED STATES OF AMERICA,        )
                                      )
 4        vs.                         ) No. SA-16-CR-574(1)-DAE
                                      )
 5   NICHOLAS ANDREAS GONZALEZ-MALVEN, ) San Antonio, Texas
                                      ) February 22, 2018
 6        Defendant.                  )
     _____)
 7                 TRANSCRIPT OF SENTENCING HEARING
 8               BEFORE THE HONORABLE DAVID A. EZRA
                    UNITED STATES DISTRICT JUDGE
 9
     A P P E A R A N C E S:
10
     FOR THE GOVERNMENT:
11        UNITED STATES ATTORNEY'S OFFICE
          By:  Tracy Thompson, Esquire
12        601 N.W. Loop 410, Suite 600
          San Antonio, TX  78216
13
     FOR THE DEFENDANT:
14        LAW OFFICE OF BRIAN C. KIMBROUGH
          By:  Brian C. Kimbrough, Esquire
15        2414 South Hackberry
          San Antonio, TX  78210
16
     COURT REPORTER:
17        CHRIS POAGE
          United States Court Reporter
18        655 East Cesar E. Chavez Blvd., Suite G-65
          San Antonio, TX  78206
19        Telephone:  (210) 244-5036
          chris_poage@txwd.uscourts.gov
20
     Proceedings reported by stenotype, transcript produced by
21   computer-aided transcription.

22

23

24

25
```

1          (Open court at 1:34 p.m.)

2              THE COURTROOM DEPUTY:  SA-16-CR-574, *United States of*

3  *America versus Nicholas Andreas Gonzalez-Malven*.

4              MS. THOMPSON:  Good afternoon, Your Honor.  Tracy

5  Thompson appearing on behalf of the United States.

6              THE COURT:  All right.  Good afternoon.

7              MR. KIMBROUGH:  Your Honor, Brian Kimbrough appearing

8  on behalf of Mr. Malven.

9              THE COURT:  All right.  Mr. Kimbrough, are you -- have

10  you had a full and ample opportunity to go over the presentence

11  investigation report and to make any objections you wish to

12  make?

13              MR. KIMBROUGH:  I have, Your Honor.

14              THE COURT:  And you've discussed it with your client?

15              MR. KIMBROUGH:  Yes, Your Honor.

16              THE COURT:  All right.  On June 14th of 2017, the

17  defendant pled guilty to two counts of production of child

18  pornography, in violation of 18 United States Code Section

19  2251(a), Counts 1 and 2 of a ten-count indictment.  Pursuant to

20  the plea agreement, the government has agreed to recommend a

21  three-level reduction for acceptance of responsibility.  And I

22  believe that was done.

23      The Court has carefully reviewed the Rule 11 plea agreement

24  in this case in conjunction with the presentence investigation

25  and report.  And I am satisfied that it does adequately reflect

1    the seriousness of the offense behavior and does not undermine

2    the statutory purposes of sentencing.  And the plea agreement

3    is hereby accepted without objection.

4        There were no objections to the factual statements in the

5    presentence report, and the Court adopts those as its findings

6    of fact.

7        There was, however, certain objections to the guideline

8    computation.  The Court adopts those portions of the guideline

9    computation as to which there were no objections, and would

10   address the objections as follows:

11       The defendant objects to paragraphs 20 through 27 in the

12   victim impact statement, arguing that the Mandatory Victim

13   Restitution Act of 1996 applies only to the victim in Counts 1.

14       That objection will be overruled.  The defendant should

15   carefully read paragraph 22, which clearly states that the

16   child victim associated with Counts 1 and 2 is entitled to the

17   agreed restitution.

18       Objection number two, the defendant objects to paragraph 34

19   because the defendant's conduct allegedly does not meet the

20   definition for a sexual act or sexual conduct, which

21   specifically states "contact" means the intentional touching of

22   the genitalia, anus, groin, breast, inner thigh or buttocks.

23   The defendant declares his conduct included "pants are being

24   pulled down, exposing his buttocks, and a finger is touching

25   the area between his buttocks."

1    That objection is going to be overruled.  The defendant's

2    conduct clearly meets the definition of sexual contact as

3    outlined in 18 USC 2246(3) by touching any area of the

4    buttocks.  However, it is represented by the defendant in the

5    presentence report that he penetrated the anus of the child

6    victim with his finger, specifically paragraphs 13, 14 and 15.

7    Communications with Michael Lee Kiper, wherein the

8    defendant described graphically inserting his finger into the

9    anus of the child victim and then distributed pictures as proof

10   to Kiper.  Given this admission, the defendant's conduct meets

11   the definition of 18 USC 2246(2)(C) which includes "the

12   penetration, however slight, of the anal or genital opening of

13   another by hand or finger."  So that is overruled.

14   Objection number three, the defendant objects to

15   enhancement at paragraph 36 because he asserts that the child

16   victim in Counts 1 and 2 does not meet the definition of a

17   toddler.

18   The enhancement is appropriately applied in this case

19   because it is applicable.  The defendant -- the Court notes

20   U.S. Sentencing Guideline 1B1.3(a)(1)(A) which defines relevant

21   conduct as all acts and omissions committed, aided, abetted,

22   counseled, commanded, induced, procured, or willfully caused by

23   the defendant.  And that occurred during the commission of the

24   instant offense.

25   The defendant should also note U.S. Sentencing Guideline

1    6B1.4, comment N, which states, "The Court is also not

2    obligated to accept the stipulations of the parties.  Even

3    though stipulations are expected to be accurate and complete,

4    the Court cannot rely exclusively upon stipulations in

5    asserting the factors relevant to the determination of

6    sentence.  Rather, in determining the factual basis of the

7    sentence, the Court will consider the stipulation together with

8    the results of the presentence investigation and other relevant

9    information."

10        Here, the defendant was found to possess 83 images of child

11   pornography of which images depicted toddlers.  So the

12   objection is overruled.

13        Objection number four, the defendant objects to enhancement

14   at paragraph 42 because he asserts there is insufficient

15   evidence to establish a pattern of prohibited sexual conduct.

16   The Court would note that the defendant pled guilty to Counts 1

17   and 2 which occurred on June 28th and July 21, both of 2016.

18   Under U.S. Sentencing Guideline 4B1.5, the general definition

19   of "pattern of activity" means the defendant engaged in a

20   pattern of activity involving prohibited sexual conduct if on

21   at least two separate occasions the defendant engaged in

22   prohibited sexual contact with a minor.  There were -- there is

23   evidence of other contact.  However, this in and of itself

24   meets the definition.  So the objection is overruled.

25        The offense level is 43.  The criminal-history category is

1    one.  As to Count 1, the imprisonment range is 360 months.

2    Guideline imprisonment range as to Count 2, 360 months.  Counts

3    1 and 2 to run consecutively.

4        Supervised release as to Count 1, five years to life.  As

5    to Count 2, five years to life.

6        A fine as to Count 1 of 50,000 to $500,000; as to Count 2,

7    50,000 to $500,000.

8        Restitution on Count 1, $3,000; Count 2, $3,000.

9        Special assessment of $200.  That's $100 per count.

10       And the JVTA is $5,000 as to Count 1; and Count 2, $5,000.

11       All right.  I'll hear from counsel for the defendant.

12           MR. KIMBROUGH:  Your Honor, I understand the Court's

13   position.  I would ask the Court to run these counts

14   consecutively and not concurrently.  And I would rely on some

15   of the points I made in my sentencing memorandum.

16           THE COURT:  Which I've reviewed.

17           MR. KIMBROUGH:  Thank you, Your Honor.

18       I'll also point out, this case is related to the Kiper

19   case, which I know the Court heard.  Now, the cases are not the

20   same.  I'm not saying that they're the same in terms of facts.

21   But the images that Mr. Malven was sending were being sent to

22   Mr. Kiper.  And so they were related to each other.  And I know

23   that Mr. Kiper has a different situation, but -- and I believe

24   the Court sentenced him to 240 months.

25       Now, Mr. Malven I believe should get 360 months.  He should

1    get the statutory maximum.  But I would ask the Court to

2    consider running the cases concurrently.  He has no criminal

3    record of any kind.  He is honorably discharged from the

4    military.  His family is present here, Your Honor, on his

5    behalf.  He has a great deal of family support.

6        He made a great error.  I don't know if the Court is

7    considering the other allegations that were made from the

8    daycare center.  That was the purpose of my objection.  I

9    understand the Court's ruling, and I don't object to the

10   Court's ruling concerning the pattern based on the two images.

11   But there is insufficient evidence to consider that he is a

12   danger to the other children when he was working there.  He

13   denies that.  However, he fully admits what he did was a

14   violation not only of the victim but of his role as a caretaker

15   of children.

16       He has a disability.  He has a disease.  He has something

17   that's wrong with him.  But it can be dealt with in treatment

18   in prison.  And I ask the Court to consider a concurrent

19   sentence to at least allow him the possibility of living in the

20   future.

21       That's all I have.

22           THE COURT:  Does your client wish to address the

23   Court?

24           MR. KIMBROUGH:  Yes, Your Honor.

25           THE COURT:  All right.

1              THE DEFENDANT:  Your Honor, first off, I would like to

2     apologize to the victim and their family and to the ladies and

3     gentlemen of the court.  I want to apologize to my family.  I

4     know what I did was wrong.  I regret it very much so.  I have

5     not had a day where I don't think about what I've done.  And if

6     I could take it all back, I would.

7         And I know that this action does not define who I am as an

8     individual.  And I do hope that in the future I can have a

9     chance for redemption and that I can prove to people that I am

10    a good person, and I did not -- I did not wish for any of this

11    to happen.  And I hope you can take that into consideration.

12        That's all.

13              MS. THOMPSON:  Your Honor --

14              THE COURT:  Ms. Thompson.

15              MS. THOMPSON:  Thank you.  The government's asking for

16    a consecutive sentence.  It's not appropriate that the

17    defendant chose to sexually exploit this child on multiple

18    occasions.  And he shouldn't be rewarded for, Hey, once I

19    sexually assaulted that child, if I keep assaulting that child,

20    they'll just run the sentences concurrent; or, I won't get

21    additional time each time I go back and sexually exploit that

22    child.  So that's one of the reasons.

23        The other is, Mr. Malven, by working at the daycare, was

24    very well aware of the fact that the child he sexually

25    exploited in this case had been sexually abused before by a

1   nonfamily member.  And the fact that he picked that child to

2   sexually exploit, who had been victimized before in his short

3   four years, makes it even more atrocious.

4       This is not -- when he says, This action doesn't define me

5   as a person, it wasn't one action.  This is a series of

6   actions.  He can blame Mr. Kiper all he wants, but he has been

7   viewing and masturbating to child pornography for at least five

8   years.  That's well before Mr. Kiper came into his life and he

9   started that relationship.

10      I will agree that the relationship he had with Mr. Kiper

11  helped fuel this activity.  It normalized his sexual interest

12  in children.  But when you read the chats between those two

13  individuals, it's not just about having a sexual interest in

14  children.  They chat and plan to sexually torture children,

15  shoving sex organs in their mouths so that they can't hear them

16  scream.  The detail is beyond disturbing, what they were

17  chatting about.

18      So to say that -- to indicate sort of he had a bad day or

19  this is a small thing that he did wrong, misses the entire

20  point.  He has a very strong sexual interest in children.  He's

21  acted out on it.

22      I disagree that he's not a danger to all children.  He is a

23  danger to every child.  He was working in a daycare facility

24  and taking pictures of his own penis laid out on the sink.

25  There's a video of him masturbating in the bathroom of the

1   daycare facility.  He is a danger to all children in society,

2   and that has to be taken into consideration.

3       One of the things law enforcement found at his apartment

4   that I thought was really interesting and disturbing in the

5   same way is that he filed a complaint with the daycare that he

6   worked at in Washington state because he wasn't given access to

7   younger children.  And in the complaint he indicates that it

8   might be because he's male.

9       But he complained about not having access to younger

10  children, younger children who aren't able to verbalize what is

11  happening to them or aren't as easily believed as older

12  children who are much more articulate and have a better memory

13  and can articulate what's happened to them.

14      He didn't just send these images to Michael Kiper.  He sent

15  them to other people who have a sexual interest in children.

16  He's communicating with a lot of different people that have

17  expressed a sexual interest in children, one of them known as

18  Open Guy, who was arrested and investigated in the Austin

19  Division.  So it's not limited to, Michael Kiper made me do it.

20  This is a big part of who he is.  It's not all of who he is,

21  but it is a big part of who he is.

22      When he and Mr. Kiper would get together on their own, one

23  of the things they would do is view child pornography.  That's

24  part of what created a sexual atmosphere for them.  He

25  discussed with Kiper their interest in molesting a two-year-old

1    child.  In fact, Mr. Kiper made arrangements to engage in

2    sexual activity with a two-year-old, and he made arrangements

3    with the FBI to engage in that activity, Agent Allovio working

4    undercover.

5        Now, Mr. Kiper didn't go through with that activity.  He

6    never showed up, and he called that off.  But one of the things

7    he talked about and one of the things he shared with Mr. Malven

8    and others was his knowledge of how to sexually assault a small

9    child and use medication and ice and some different kind of

10   sleeping aids to make the child groggy or fall asleep, and then

11   ice and I think hemorrhoid cream and something else to put on

12   their anuses to cover up any physical evidence of sexual abuse

13   before they go back to their parents.

14       It was more than -- and I don't know how to say this

15   without minimizing the conduct.  The production of child

16   pornography that he engaged in at the daycare, that was

17   horrific.  But what these two planned to do and talked about

18   doing and normalized was torturing young children.

19       And all this is going on when this man knew he had a

20   communicable disease that he could very easily be spreading to

21   other people, especially working at a daycare, helping children

22   go to the bathroom.  This is not -- this isn't an action.  It's

23   a series of actions, years of actions.  And I disagree.  It is

24   a big part of who he is.

25       And because of all the facts and circumstances in this case

1    put together, the government is asking for a guideline

2    sentence, which in this case is 720 months.

3           THE COURT:  All right.  Well, these are some of the

4    more, and most, difficult cases a judge has to deal with.  It's

5    why many senior judges, who have the option of doing so,

6    relieve themselves of the responsibility to hear criminal

7    cases.  But somebody has to do it.  And in a busy district like

8    this, I just can't step away from those responsibilities, and I

9    won't.

10        You know, in looking at this case, I have kept in mind the

11    responsibility that I have to act in a measured and careful

12    manner and follow the tenants of the Supreme Court,

13    specifically Justice Kennedy when he said that you must, in

14    judging the case, not just look at the acts, but you must look

15    at the whole person.  And I try to do that in every sentencing.

16        And these cases are, of course -- and this one in

17    particular I think is of a kind and nature which raises the

18    average person's sense of outrage.  There are very few things

19    in our society that are less tolerated than violence against

20    children or sexual abuse against children.  And that's

21    primarily because children are the wards of our custody.  They

22    have and should have the protection of their parents and those

23    who care for them and those who are entrusted to care for them.

24    And when that trust is violated and it is violated in a manner

25    such as this, it creates a difficult and very trying scenario.

1        You know, I recently watched a judge on television

2   pronounce sentence against the doctor who abused all of those

3   young Olympic athletes.  I agreed with the sentence that he

4   received, but I didn't agree with the manner in which he handed

5   down that sentence, sarcastically tearing up victim

6   statement -- not victim statements -- perpetrator statement and

7   making a show of the sentencing as if the sentencing was some

8   sort of carnival.  A sentencing is not a carnival.  A

9   sentencing is a very serious and important judicial proceeding

10  that invokes the most contemplative effort by all involved.

11       What is unusual about this case and particularly,

12  particularly troubling is that it hits at the very heart of a

13  fact of life for working parents in our community.  Most

14  people, if they were given the choice, would like to be able to

15  be around their children 24/7, or when they're not in school.

16  But the fact of life is that today, economic realities as well

17  as the legitimate -- and I say legitimate aspirations of women

18  to exercise themselves to their full potential, calls upon them

19  to entrust their children to daycare so that they can work and

20  provide for their families, just as their partner or husband

21  provides.  And we have it in this courthouse.  We have it in

22  all of the working world here in San Antonio and throughout

23  this country.

24       And, unfortunately, we have a situation in this case where

25  a person who was given that sacred trust by the parents took

1  advantage of it for his own personal gratification on multiple

2  occasions, not just committing a crime against these children,

3  the sexual abuse, which was certainly horrific and bad enough,

4  but violating the trust of these parents, and for that matter

5  even the daycare operator, and created a scenario here that is

6  every parents' worst nightmare, that has their children in any

7  type of a daycare environment.

8      Short of -- short of the child being killed or very

9  seriously injured, this is right up there with the thing that

10  parents fear the most, and they have every right to expect will

11  never happen.  But, unfortunately, in this case it did.

12     Now, I have looked very carefully at all of the 3553

13  factors.  I've studied this case in great depth and detail.

14  And I have been sentencing defendants in federal court for the

15  30 years I've been a federal judge.  And I don't remember a

16  case that I have spent as much time on as I spent on this,

17  looking over the history and the background and the situation

18  involving this child.

19     The guidelines in this case are severe.  There's no

20  question about it.  Each count carries a 360-month or 30-year

21  term of imprisonment.  And that, we have to remember, is

22  without the possibility of parole.

23     I have to say that what has bothered me the most is trying

24  to reconcile the substantial length of imprisonment with the

25  serious nature of the defendant's misconduct here.  I've

1    handled a lot of -- I'm sorry to say, I've handled a lot of

2    child pornography cases.  Most of them are individuals who

3    collect pornography.  We don't get many production cases

4    because a lot of the production occurs overseas.  A lot of it

5    occurs here, too, but I haven't seen many production cases.

6    Maybe other judges have other experience, and maybe the U.S.

7    Attorney's office or the FBI here has other experience.  I

8    don't know.  But I haven't seen a lot of production cases as

9    compared to possession cases.  I see many more possession cases

10   than I do production cases.

11       And it's also true that a lot of these images circulate for

12   years.  And that's one of the problems, is that these images

13   get out there, and they never disappear.  They just keep

14   recirculating.  So, I mean, I've had cases from 15 years ago,

15   and I see the same images -- I don't see them because I don't

16   look at them, but I see them described -- that I had 15 and 20

17   years ago.  They're still floating around.  And every time

18   somebody looks at them, these people are being revictimized.

19       I don't know whether the images in this case ever made it

20   to the internet.  I have no evidence of that.  I have evidence

21   that they were transmitted to other people.  And these are

22   people that do put things up on internet and trade them.  So I

23   would not be surprised that these images didn't find their way

24   in one shape or form onto the -- onto the internet, where

25   they'll be passed around and shared.  I don't know that, and

1    I'm not sentencing the defendant as if that occurred.  But I
2    would not be surprised if it -- if it didn't.
3        But he did share them.  And he did put these images that he
4    took in the, kind of, chain of commerce so to speak so that
5    there was a serious likelihood that they would be shared on the
6    internet.  And that is a serious problem.
7        So not to belabor the point, this Court has, as I said,
8    carefully looked at all the 3553 factors.  And it is the
9    judgment of the Court, pursuant to the Sentencing Reform Act of
10   1984, that the defendant is hereby sentenced to a term of
11   imprisonment as to Count 1 of 360 months.
12       The Court has carefully considered the suggestion that the
13   second count should not run consecutively.  The Court, after
14   having a very difficult time and looking at it very carefully,
15   has concluded that it should run consecutively.  And --
16   however, I do believe that a second 360-month term is simply
17   too long.  So it is the judgment of this Court that the
18   defendant is hereby sentenced as to Count 2 to a term of 180
19   months, or 15 years.  The total term of imprisonment is 45
20   years.
21       That will be followed by ten-year term of supervised
22   release as to Counts 1 and 2.  And those should run
23   concurrently rather than consecutively.
24       During the term of supervised release, the defendant shall
25   abide by all standard conditions adopted in the Court's

1    November 28, 2016 order.  The defendant shall participate in a

2    sex-specific -- an offense-specific treatment program and

3    submit to periodic polygraph testing at the direction of the

4    probation officer as a means to ensure compliance with the

5    requirements of supervision or the treatment program.  The

6    defendant shall follow the rules and regulations of the

7    program.  The probation officer will supervise the defendant's

8    participation in the program.

9        The defendant shall allow the probation office to install

10   computer monitoring software on any computer, as defined in 18

11   USC 1030(e)(1), the defendant uses.  To ensure compliance with

12   the computer monitoring condition, the defendant shall allow

13   the probation office to conduct initial and periodic

14   unannounced searches of any computers, as defined in 18 USC

15   1030(e)(1), subject to computer monitoring.

16       These searches shall be conducted for the purpose of

17   determining whether the computer contains any prohibited data,

18   prior to the installation of the monitoring software, to

19   determine whether the monitoring software is functioning

20   effectively after its installation and to determine whether

21   there have been attempts to circumvent the monitoring software

22   after its installation.  The defendant shall warn any other

23   people who use these computers that the computers may be

24   subject to searches pursuant to this condition.

25       The defendant shall submit his property, house, residence,

1  vehicle, papers, computers, other electronic communications or

2  data storage devices or media or office to a search conducted

3  by a United States probation officer.  Failure to submit to

4  such a search may be grounds for revocation of release.  The

5  defendant shall warn any other occupants that the premises may

6  be subject to searches pursuant to this condition.

7       The probation officer may conduct or search under this

8  condition only when reasonable suspicion exists that the

9  defendant has violated a condition of supervision and that the

10  areas to be searched contain evidence of this violation.  Any

11  search must be conducted at a reasonable time and in a

12  reasonable manner.

13      The defendant shall not associate with any child or

14  children under the age of 18 except in the presence and

15  supervision of adults, and adults specifically designated in

16  writing by the probation officer.  The probation officer will

17  notify the designated adult of the risk occasioned by the

18  defendant's criminal record or personal history or

19  characteristics.  The defendant shall permit the probation

20  officer to make such notifications.

21      The defendant shall reside in a residence approved in

22  advance by the probation officer.  Any changes in the residence

23  must be preapproved by the Court.  The defendant shall not

24  reside within 1,000 feet of the real property comprising a

25  public or private elementary, vocational or secondary school or

1  a public or private college, junior college, university or

2  playground or other housing authority owned by a public housing

3  authority or within 100 feet of a public or private youth

4  center, public swimming pool or video arcade facility without

5  prior approval of the Court.

6      Based on the defendant's financial position, a fine is not

7  recommended.

8      The defendant must pay the United States a special

9  assessment of $200.

10     Now, I think there's a victim restitution payment here?

11         MS. THOMPSON:  Yeah.  Per the plea agreement, the

12  defendant has agreed to pay restitution in the amount of $3,000

13  to Child Victim 1.

14         THE COURT:  All right.  And that will -- the Court

15  will award the restitution of $3,000 to Child Victim 1.

16         MS. THOMPSON:  Thank you.

17         THE COURT:  Now, the defendant has executed a plea

18  agreement in which he has specifically waived his right to

19  appeal his sentence.  And that plea agreement is in effect and

20  has been accepted by the Court.  So there is no appeal

21  available to him.

22     Now, the Court has sentenced the defendant to a 45-year

23  term of imprisonment, and he is approximately, I believe, 30

24  years old.  And so one wonders why the Court imposed all those

25  conditions of supervision given the very lengthy prison term.

1    And the reason is that one never knows what's going to happen

2    with sentencing down the road.

3        The Supreme Court recently -- Congress recently changed and

4    the Supreme Court recently approved changes to sentencing,

5    which caused the Court to have to resentence individuals for

6    certain drug crimes, for instance.  And right now there is a

7    Sentencing Reform Act under consideration.  I don't know

8    whether it'll apply to this.  I doubt it, but it could apply

9    retroactively.  The Court never knows.

10       So while there is no appeal or parole available to the

11   defendant and the chances are he will serve his full 45 years,

12   nonetheless, the Court can't be sure of what might happen 10,

13   20, 15 years from now.  Who knows?  And so it's better to have

14   the matter covered.

15       All right.  Is there anything else, Ms. Thompson?

16            MS. THOMPSON:  Your Honor, I believe the Court signed

17   a preliminary order of forfeiture, which was also agreed to in

18   the plea agreement.  I would just ask for a final order of

19   forfeiture.  And the government will submit that.

20            THE COURT:  Yes.  The final order of forfeiture will

21   be entered.

22       Anything from the defense?  Is there a place he would like

23   to serve his sentence?

24            MR. KIMBROUGH:  Yes, Your Honor.  He would like to

25   serve it at Seagoville.

1          THE COURT:  Okay.  I'll make that recommendation.

2          MR. KIMBROUGH:  Thank you, Your Honor.

3          THE COURT:  Okay.  Anything else?

4          MR. KIMBROUGH:  Nothing further.

5          THE COURT:  Nothing?  Okay.  Court stands in recess.

6      (Pause)

7          THE COURT:  Yeah.  What about that 5,000 JT -- JVTV?

8          MS. THOMPSON:  Oh, that's mandatory if the defendant

9  is not indigent.  In this case the government --

10         THE COURT:  He is.

11         MS. THOMPSON:  -- believes he's indigent.  So it does

12  not apply.

13         THE COURT:  Okay.  I wanted to -- that's what I

14  thought, but I wanted to be sure.

15         MS. THOMPSON:  Sorry.  I should have mentioned that.

16         THE COURT:  That's all right.  Thank you.

17  * * *

18      (Hearing adjourned at 2:11 p.m.)

19

20

21

22

23

24

25

-oOo-

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.  I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.


Date:  5/24/2018        /s/ Chris Poage
                        United States Court Reporter
                        655 East Cesar E. Chavez Blvd., Rm. G-65
                        San Antonio, TX  78206
                        Telephone:  (210) 244-5036